LEONARDO M. RAPADAS
United States Attorney
ERIC S. O'MALLEY
Assistant United States Attorney
DISTRICT OF THE NORTHERN
  MARIANA ISLANDS
Horiguchi Building, Third Floor
P.O. Box 500377
Saipan, MP 96950
Telephone:  (670) 236-2980
Fax:        (670) 236-2985

Attorneys for United States of America

F I L E D
Clerk
District Court

DEC 18 2007

For The Northern Mariana Islands
By_____
       (Deputy Clerk)

UNITED STATES DISTRICT COURT
NORTHERN MARIANA ISLANDS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Criminal Case No. 07-00028 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **AFFIDAVIT IN SUPPORT OF** |
| | ) | **ARREST WARRANT** |
| REYES, ROSE MAYO, | ) | |
| (a.k.a. Amin, Rose Mayo) | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

THE UNDERSIGNED HEREBY SWEARS UPON INFORMATION AND BELIEF THAT:

1. I, Eric S. O'Malley, am an Assistant United States Attorney assigned to the District of the Northern Mariana Islands. I have been employed in this capacity since May of 2007.

2. On or about November 1, 2007 agents of the United States Diplomatic Security Service (DSS) began an investigation into potential sham marriages and fraudulent passport applications on the island of Saipan, Commonwealth of the Northern Mariana Islands.

3. On or about December 2, 2007, DSS Resident Agent in Charge Justin Otto and Special Agent Lando Sales interviewed ROSE MAYO REYES, (a.k.a. Rose Mayo Amin) (REYES) at her residence in the village of Tanapag, on the island of Saipan, in regards to her marriage to MOHAMMED RUHUL AMIN (AMIN).

4. During this first interview, REYES signed a sworn statement that said, *inter alia*, that her marriage to AMIN was fraudulent, that it was done to provide AMIN immigration status, that in exchange he gave her cash and gifts valued in the hundreds of dollars, and that REYES had filled out a form DS-11 (Application for a U.S. Passport) at AMIN's behest.

5. On or about December 3, 2007, agents Otto and Sales met again with REYES, taking her fingerprints and photograph.

6. On December 5, 2007, Special Agent Sales met REYES at her residence in Tanapag. Sales informed REYES that he was placing her under arrest, but that if she was willing to cooperate in the investigation of AMIN, she would not be taken into custody at that time. REYES indicated her desire to cooperate and signed a "Magistrate Waiver" (Attached as Exhibit A), thus waiving her right to be promptly brought before a magistrate under Rule 5(a) of the Federal Rules of Criminal Procedure.

7. Special Agent Sales told REYES that DSS would soon be contacting her regarding her case and the specific aspects of her cooperation. She was instructed to make herself readily available, in person or by phone.

8. Special Agent Sales departed the CNMI shortly thereafter (Otto had already departed).

9. A Complaint charging REYES with one count of making a false statement in an application for a U.S. passport, in violation of Title 18, United States Code, Section 1542, was filed in the United States District Court for the Northern Mariana Islands on December 7, 2007.

10. Because agents Otto and Sales were no longer on island, I requested support from the CNMI Attorney General Investigation Unit (AGIU) and the U.S. Marshal Service to make contact with REYES.

11. The hope, based on REYES's earlier cooperation, was that she would participate willingly in the investigation of AMIN, and thus obviate a need to take her into custody, at least at that time.

12. On or about December 10, 2007, Deputy U.S. Marshal Donald Hall placed a telephone call to a number provided by and previously used to contact REYES. A man with a heavy accent answered the phone and told Deputy Marshal Hall that the defendant no longer lived at that address, that she had moved "far away", and that she did not leave behind a telephone number where she could be reached.

13. About this time, law enforcement officers received a tip that REYES had moved to another residence in the village of Chalan Kanoa.

14. On or about December 10, 2007, Deputy U.S. Marshal Wolfgang Calvert also telephoned the home number provided by REYES, but there was no answer. Calvert also contacted the listed employer, the person answering the phone identified the company as "U R Gas"

(mis-identified in DSS documents as "Mr. Gas"), and stated that REYES had not worked there since August 2007.

15. On or about December 11, 2007, Deputy Marshal Calvert contacted Captain Raymond Omar of the Commonwealth Ports police. Captain Omar is REYES' uncle.

16. Deputy Marshal Calvert asked Captain Omar to convey a message to REYES that the authorities wished to speak with her, and that she had no more than forty-eight hours in which to contact them–otherwise, they would seek a warrant for her arrest.

17. That same day, Deputy Marshal Calvert spoke again with Captain Omar, who confirmed that the message had been passed to REYES.

18. Deputy Marshal Calvert verified with CNMI Division of Immigration that REYES had not left the CNMI and that there was no history of her traveling in recent years.

19. As of the date of this Affidavit, REYES has not contacted AGIU, the U.S. Attorney's Office, the U.S. Marshals, or the DSS, as requested.

SWORN THIS 18th DAY OF DECEMBER 2007.

ERIC S. O'MALLEY
Assistant United States Attorney
District of the N.M.I./Guam